1  TRACY L. WILKISON
   Acting United States Attorney
2  BENJAMIN R. BARRON
   Assistant United States Attorney
3  Chief, Santa Ana Branch Office
   GREGORY W. STAPLES
4  Assistant United States Attorney
   California State Bar No. 155505
5       411 West Fourth Street, Suite 8000
        Santa Ana, California  92701
6       Telephone: (714) 338-3500
        Facsimile: (714) 338-3523
7       Email: Greg.Staples@usdoj.gov

8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

9
                    UNITED STATES DISTRICT COURT
10
                 FOR THE CENTRAL DISTRICT OF CALIFORNIA
11
   UNITED STATES OF AMERICA,          No. SACR 20-35-JLS
12
             Plaintiff,                GOVERNMENT'S SENTENCING POSITION;
13                                     MOTION FOR DOWNWARD DEPARTURE
             v.                        PURSUANT TO U.S.S.G. § 5K1.1
14
   DAVID LEE PARRISH,                  Date: November 5, 2021
15                                     Time: 1:30 p.m.
             Defendant.
16

17

18

19       The government submits its sentencing position.

20   Dated: October 21, 2021        Respectfully submitted,

21
                                         /s/
22                                  GREGORY W. STAPLES
                                    Assistant United States Attorney
23

24

25

26

27

28

## I. INTRODUCTION

The government does not object to any findings in the PSR. The government agrees with Probation's Guidelines calculations and recommends a sentence of 15 months in custody, three years of supervised release, restitution in the amount of $166,574.10, and the other terms and conditions recommended by Probation.

## II. THE OFFENSE CONDUCT

Defendant David Lee Parrish pleaded guilty to an Information charging him with conspiracy to commit wire fraud in violation of 18 U.S.C. § 371. In his plea agreement, defendant stipulated to the following facts:

> Beginning in or about November 2018, defendant entered into an agreement with Individual A[1] where he knew or should have known that he would be engaged in a scheme to defraud investors through the Church of the Healthy Self ("CHS") and related entities. CHS is a Texas non-profit corporation formed on September 11, 2014. CHS Asset Management, Inc. ("CHS AM"), is a Texas for-profit corporation formed on September 20, 2017. CHS and CHS AM were created and controlled by Individual A, who claimed to be the Pastor for CHS. In November 2018, defendant was named the Chief Executive Officer and Director of the CHS Trust, the investment arm of CHS. Defendant appeared on television and in live seminars at CHS offices in Westminster, California, soliciting investments in CHS Trust. Recordings of these appearances were often uploaded to YouTube. In these appearances, defendant made the following claims: (1) that CHS

---

[1] Individual A is Kent Whitney. The Court sentenced Whitney to 168 months. <u>United States v. Whitney</u>, SACR 20-52-JLS; ECF 50.

Trust guaranteed an annual rate of return of 12%; (2) guaranteed return of principal with no risk because the investments were backed by the FDIC and SIPC (Securities Investor Protection Program); (3) that in the past five years the worst return CHS realized was a 1.5% profit for the month of January 2015; (5) that the traders used by CHS had not lost money in 15 years; (6) that CHS was audited by KPMG; and (7) that defendant himself was an experienced Wall Street trader.

At the time defendant made these statements, he knew or should have known the statements were false or misleading. In fact, CHS did not produce a 12% annual return; despite millions of dollars deposited from CHS investors, little investor money went into any trading accounts in 2018; CHS Asset Management was not formed until 2017, thus the statements regarding the investment performance over the past five years and fifteen years were misleading; CHS was not audited by KPMG; and defendant was not an experienced Wall Street trader. In addition, defendant knew and failed to disclose that Individual A was convicted of wire fraud in connection with an investment fraud scheme in 2011 and was in prison until 2014. Defendant also knew and failed to disclose that Individual A was permanently banned from the commodities industry by the Commodity Futures Trading Commission.

In furtherance of the scheme, on February 19, 2019, defendant appeared on a local Vietnamese television channel in Orange County in which he claimed he was the Director of CHS Trust, that CHS Trust offered a 12% guaranteed return on investments, that the worst month in the last five years was

    1.5% return in January 2015, and investors would receive a 100% principal return with zero risk because the funds were backed by the FDIC and SIPC. Defendant invited viewers to attend a seminar at CHS offices in Westminster, California.

ECF 6, Plea agreement ¶ 16.

    As noted below, for settlement purposes the government agreed to a loss amount for defendant equal to the money he derived from the scheme. The government did not seek to impose the entire loss from the scheme for the following reasons. First, defendant did not become actively involved in the investment side of the scheme until November 2019, a few months before the SEC shut it down. Prior to that time defendant was involved in charity outreach for CHS. There is no evidence defendant was involved in the solicitation of investments or the use of victims' money. In November 2019, defendant began appearing in promotional videos and at in-person seminars at Whitney's direction. He repeated the claims regarding the investments that Whitney provided him. Despite his titles of CEO and Director, defendant did not have access to bank records or trading accounts and was provided fraudulent summaries of trading by Whitney. He was also shown monthly investor account statements that showed purported earnings and payments to victims.

    Second, defendant had at least some belief in the scheme at the outset because he had friends and family members, including his mother, invest in the scheme. Defendant pleaded guilty on the theory that he "knew or should have known" that the statements he was making during solicitations were false. Defendant was aware that Whitney had been convicted of fraud previously, and failed to disclose the fact to victims or exercise more diligence in verifying the claims he

was making.  As discussed below, the government believes defendant is much less culpable than Whitney, who created and controlled the scheme.

**III. GUIDELINES CALCULATIONS**

Probation calculates the Sentencing Guidelines as follows:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2X1.1 |
| Specific Offense Characteristics | | |
| Loss > $150,000 | 10 | U.S.S.G. § 2B1.1(b)(1)(F) |
| More than 10 victims | 2 | U.S.S.G. § 2B1.1(b)(2) |
| Misrepresentation of Religious organization | 2 | U.S.S.G. § 2B1.1(b)(9) |
| Accept. Resp. | -3 | U.S.S.G. § 3E1.1 |
| Total offense level | 17 | |

Probation determined that defendant is in Criminal History Category I. PSR ¶ 48.  The resulting sentencing range for an offense level of 17 and Criminal History Category I is 24-30 months. Probation recommends a sentence of 27 months in custody based on defendant's prior involvement in a scheme to defraud with Kent Whitney.  ECF 31, Rec. ltr. at 6-7.  Probation also recommends an order of restitution in the amount of $166,574.10, with a payment of $100,000 due within 90 days of sentencing.  Id. at 1.  Probation recommends no fine and three years of supervised release.

In the plea agreement, the parties agreed to the following Guidelines calculations:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2X1.1 |
| Specific Offense Characteristics | 10 | U.S.S.G. § 2B1.1(b)(1)(F) |

```
Loss > $150,000
More than 10 victims               2            U.S.S.G. § 2B1.1(b)(2)

Accept. Resp.                      -3           U.S.S.G. § 3E1.1
```

Plea agreement ¶ 16.  The parties reserved the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Id.

The government agrees with Probation's assessment of an additional two-level enhancement for misrepresentations in connection with a religious organization.  Thus, the government believes the total offense level, prior to the government's request for a downward departure, is 17 with a sentencing range of 24-30 months.

For the reasons set forth below, the government moves for a 3-level downward departure based on defendant's cooperation with the government.  If granted, the total offense level would be 14, with a sentencing range of 15-21 months.  The government recommends a sentence of 15 months in custody along with the other terms and conditions recommended by Probation.

**IV.  MOTION FOR DOWNWARD DEPARTURE**

The government moves for a 3-level downward departure pursuant to U.S.S.G. § 5K1.1 based on defendant's substantial assistance. Defendant agreed to plead guilty and cooperate soon after his counsel was contacted by the government.  Defendant signed a cooperation plea agreement and was interviewed several times by the government. Defendant entered his guilty plea in September 2020, at which point his plea agreement and FBI 302s of his interviews were provided to counsel for Whitney.  Soon thereafter Whitney agreed to plead guilty. He entered his guilty plea to wire fraud and filing false tax returns

in November 2020. The government believes defendant's cooperation played a role in Whitney's decision to plead.

The information provided by defendant was truthful, complete, and reliable. In particular, defendant was able to establish the role Whitney played in directing the activities of CHS, controlling both the money that came in and the issuance of false trading reports and monthly investor statements. This was useful because Whitney maintained a low profile to the public - few victims even knew of Whitney. Employees of CHS told the government that Whitney assured them that trades were taking place and showed them records of purported trades and profits. Defendant confirmed that Whitney was the only one in contact with two commodity traders in Chicago who were supposed to be conducting the trades for CHS.

The nature and extent of defendant's cooperation consisted of interviews and the provision of documents. He was willing to testify had Whitney gone to trial.

The government is not aware of any threat to defendant as a result of his cooperation.

Defendant's cooperation was timely. He agreed to plead guilty shortly after his lawyer was contacted by the prosecution.

**V. SECTION 3553 FACTORS**

A sentence of 15 months is no greater than necessary to achieve the goals of 18 U.S.C. § 3553 given defendant's cooperation with the prosecution and his role in the offense.

There is no question that the loss of $22 million dollars by hundreds of victims is a serious offense. But for his cooperation the government would be recommending a longer prison term.

In considering the seriousness of the offense, however,

defendant's role in the offense is a mitigating factor.  As noted above in the discussion of the loss estimate, the government views defendant as less culpable than Whitney, who created, directed, and controlled the scheme.  Whitney was responsible for the claims made to investors and how their money was used.  Without defendant, victims would still have lost their money, but without Whitney there would have been so scheme.

The government believes a sentence of 15 months is consistent with sentences imposed in other cases for cooperating defendants with similar loss amounts.

**VI. CONCLUSION**

Based on the foregoing reasons, the Court should impose a sentence of 15 months in custody, three years of supervised release, restitution in the amount of $166,574.10, and the other terms and conditions recommended by Probation.